WILLIAM D. WILLIGEROD, JR., *et al.*
*v.*
CYRUS SHARAFABADI, *et al.*
(No. 12647)

Submitted September 26, 1967. Decided December 12, 1967.

*McCamic & McCamic, Jeremy C. McCamic,* for appellants.

*Chester R. Hubbard, O'Brien & O'Brien, Frank A. O'Brien, Goodwin, Mead & Goodwin, Russell B. Goodwin,* for appellees.

CALHOUN, PRESIDENT:

This case is before the Court on appeal by William D. Willigerod, Jr., and Wilma N. Willigerod, husband and wife, plaintiffs in the trial court, from a final judgment rendered for the defendants by the Circuit Court of Ohio County in a civil action instituted in that court against Cyrus Sharafabadi, M. D., Ohio Valley General Hospital, a corporation, and Matt L. Kirkland, Jr., M. D., as defendants, in which civil action the plaintiffs assert that Wilma N. Willigerod sustained personal injuries as a consequence of the negligence of the defendants in connection with the performance of a surgical operation on her. The wife sued for recovery of damages for personal injuries sustained and for expenses incurred as a consequence of such alleged negligence. The husband sued for loss of "his wife's usual and ordinary services, consortium, etc."

Originally the action was against Cyrus Sharafabadi, M. D., as the sole defendant. Subsequently, upon motion of the plaintiffs, they were permitted to file an amended complaint by which the Ohio Valley General Hospital and Matt L. Kirkland, Jr., M. D., were made additional defendants.

The amended complaint contains the following allegations concerning the manner in which the alleged personal injuries were caused: ''On or about June 21, 1963, at the Ohio Valley General Hospital, Wheeling, Ohio County, West Virginia, the plaintiff, Wilma N. Willigerod, was grievously injured by the actions of the defendants, Cyrus Sharafabadi, M. D., The Ohio Valley General Hospital, a Corporation, and Matt L. Kirkland, Jr., M. D., in wilfully, recklessly, negligently and improperly employing the said defendant, Cyrus Sharafabadi, in ordering a nitrogen mustard preparation injected into the left arm of the said plaintiff, Wilma N. Willigerod, and in administering said injection.''

In June, 1963, Dr. Matt L. Kirkland, Jr., a physician and surgeon, performed on Wilma N. Willigerod a surgical operation referred to in the record as a radical mastectomy which involved the removal of her left breast and underlying muscles and lymph glands, because it had been determined previously that she had a cancer in that breast. In connection with the surgical operation, nitrogen mustard was given intravenously in the right arm of the patient as a means of counteracting the effects of the cancerous condition. Dr. Kirkland left orders for post-operative care of various sorts to be given to the patient following the surgery.

In connection with the administration of nitrogen mustard, an intravenous solution flowed from a plastic bottle or container through a plastic tube, and thence through a needle inserted in a vein in the patient's arm; and, at the proper time, the nitrogen mustard was injected from a syringe into a ''rubber adapter.'' Being thus mixed with the solution proceeding from

the plastic bottle or container, the nitrogen mustard ran through the needle previously inserted in the patient's arm. Dr. Kirkland testified that this was the standard procedure employed in such circumstances.

At the time of the surgical operation, the intravenous injection in the patient's right arm was successfully completed. On the day following the performance of the surgery, Dr. Cyrus Sharafabadi, who was then an intern employed by the hospital, commenced the second injection of the nitrogen mustard from the syringe into the rubber adapter from whence it proceeded through the needle which had been inserted previously in the patient's left wrist by somebody other than Dr. Sharafabadi. During that process, a swelling began to develop about the patient's arm, whereupon Sharafabadi withdrew the syringe and discontinued the injection of the nitrogen mustard. Only a nurse, a student nurse and Dr. Sharafabadi were in the room with the patient at the time.

The complaint does not charge negligence against either the nurse or the student nurse, and we are unable to discern that any negligence is proved or even charged against them in the testimony. It apparently is contended by the plaintiffs that the nitrogen mustard got out of the vein and into the subcutaneous tissue, causing the initial swelling and the additional personal injuries which are alleged to have been sustained by the patient. The testimony indicates that the injections of nitrogen mustard in such procedures are customarily made by the interns at Ohio Valley General Hospital.

At the conclusion of all the testimony, upon motions made severally by the three defendants, the court directed a verdict against the plaintiffs and in favor of the three defendants. The plaintiffs initially petitioned this Court for an appeal and a new trial as to all the defendants. This application for an appeal was

denied. Thereafter, the plaintiffs again petitioned this Court to grant an appeal and a new trial, but only as to Ohio Valley General Hospital. On this second application, an appeal was granted as to that defendant.

Final judgment on the directed verdict in favor of the defendants was entered in the trial court on March 23, 1966. The judgment as it relates to Dr. Kirkland and to Dr. Sharafabadi, therefore, has become final and it remains for us on this appeal to determine whether a new trial should be awarded as to the Ohio Valley General Hospital.

The trial court experienced no difficulty in directing a verdict in favor of Dr. Kirkland, because he was not an employee of the hospital and because he was not present at the time of and had nothing to do with the second injection of nitrogen mustard.

The verdict in favor of Dr. Sharafabadi was directed because the trial court believed that there was no competent proof, particularly no expert testimony, to prove by a preponderance of the evidence that he was guilty of negligence in connection with the second injection of nitrogen mustard. In that connection, counsel for the plaintiffs contended before the trial court that the doctrine of res ipsa loquitur should be held to be applicable and should be held to be sufficient to carry the case to the jury on the issue of negligence. The trial court rejected this contention.

Inasmuch as the alleged liability of the hospital was predicated solely on the alleged negligence of Dr. Sharafabadi under the doctrine of respondeat superior, an application of the doctrine of res ipsa loquitur could have had no effect other than to cast on Dr. Sharafabadi and the hospital a burden of going forward with the proof on the issue of Dr. Sharafabadi's negligence. The trial court having held that the doctrine of res ipsa loquitur was not applicable, and that negligence on the part of Dr. Sharafabadi had not

been established; and the trial court's judgment in that respect having become a finality, we cannot reexamine that aspect of the trial court's judgment. We must accept as a finality in the circumstances the trial court's judgment that Dr. Sharafabadi was not proved to have been negligent and, therefore, that the hospital cannot be held liable on the basis of the doctrine of respondeat superior.

The proof established no basis for a determination that, in employing Dr. Sharafabadi as an intern, the hospital negligently employed an incompetent person. The pretrial order, in defining the issues, made it clear that the plaintiffs' contention of the hospital's liability was based predominantly on the alleged negligence of Dr. Sharafabadi and incidentally on the alleged negligence of Dr. Kirkland. Throughout all proceedings relating to the trial, including the pleadings, the definition of issues by the pretrial order and the testimony, it is evident that the plaintiffs' case in the trial court was predicated solely on alleged negligence of Dr. Sharafabadi in the second injection of nitrogen mustard. There is no proof and, as we understand, no contention that any servant or employee of the hospital other than Dr. Sharafabadi had any part in the actual injection of nitrogen mustard on the occasion in question.

The hospital, being a corporation, cannot be held liable on the basis of negligence except by proof of negligence of its agents, servants or employees.

From the entire testimony, the trial court determined that the plaintiffs did not establish a case sufficient to go to the jury on the basis of negligence of Dr. Sharafabadi proximately causing the injuries to the patient and that the factual situation furnished no basis for application of the doctrine of res ipsa loquitur. We perceive no error in the rulings of the court in this respect.

We are fully cognizant of the proposition that in a tort action based solely on the alleged negligence of a servant, the liability of the master and the servant is joint and several and that the plaintiff may at his election sue either or both. *Adkins v. St. Francis Hospital,* 149 W. Va. 705, 143 S.E. 2d 154. Had a new trial been granted as to all defendants in the present case, the plaintiffs thereafter could have dismissed the action as to defendants Kirkland and Sharafabadi, and could have proceeded thereafter against the hospital as the sole defendant on the basis of the doctrine of respondeat superior. *O'Dell v. Universal Credit Co.,* 118 W. Va. 678, pt. 1 syl., 191 S.E. 568; Burks, Pleading and Practice (4th Ed.), Section 58, pages 122-23. The plaintiffs elected to join other defendants and to try the case on that basis in the trial court. On this appeal, we must take the case as it was made in the trial court.

"While the rule is otherwise in some jurisdictions, as a general rule, where a master and servant are sued jointly in an action based solely on the tortious conduct of the servant, and the servant is acquitted, there can be no recovery against the master. * * *." 57 C.J.S., Master and Servant, Section 619 b., page 421. To the same effect see 50 C.J.S., Judgments, Section 757, page 279; 35 Am. Jur., Master and Servant, Section 534, page 962; 12 M. J., Master and Servant, Section 110, page 631; *State ex rel. Bumgarner,* 139 W. Va. 92, pt. 8 syl., 79 S.E. 2d 277; *Humphrey v. Virginian Ry. Co.,* 132 W. Va. 250, 267, and pt. 3 syl., 54 S.E. 2d 204, 214; *Wills v. Montfair Gas Coal Co.,* 104 W. Va. 12, pt. 1 syl., 138 S.E. 749; *Monumental Motor Tours v. Eaton,* 184 Va. 311, 35 S.E. 2d 105.

For reasons stated in this opinion, the judgment of the Circuit Court of Ohio County is affirmed.

*Affirmed.*